IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY R. BINGMAN                    *

               Plaintiff         *

           vs.                *    CIVIL ACTION NO. MJG-13-2678

BALTIMORE COUNTY, MARYLAND           *

             Defendant         *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant's Motion for Summary
Judgment [ECF No. 46], Plaintiff's Cross-Motion for Summary
Judgment [ECF No. 47],[1] and the materials submitted relating
thereto.  The Court has held a hearing and had the benefit of
the arguments of counsel.

I.   INTRODUCTION

Plaintiff Larry R. Bingman ("Bingman") was employed by
Defendant Baltimore County, Maryland ("the County") in 2006 as a
laborer.  His employment was terminated on July 3, 2010 due to
what the County contends was an inability to perform the
essential elements of his job.  On October 23, 2012, Bingman was
awarded Social Security disability benefits.  In this lawsuit,

---

[1]  The County, in its Reply [ECF No. 50], objects to this motion
as untimely.  While the County may have a point, the motion does
not present matters that prejudice the County.  Hence, the Court
will not deny the motion as late filed.

he sues the County for allegedly violating the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., seeking
reinstatement, compensatory damages for mental anguish and
hardship, punitive damages, and attorneys' fees.

The parties have filed the instant cross-motions for
summary judgment.


II.  SUMMARY JUDGMENT

A motion for summary judgment shall be granted if the
pleadings and supporting documents "show[] that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).

The well-established principles pertinent to summary
judgment motions can be distilled to a simple statement: the
Court may look at the evidence presented in regard to a motion
for summary judgment through the non-movant's rose-colored
glasses, but must view it realistically.  After so doing, the
essential question is whether a reasonable fact finder could
return a verdict for the non-movant or whether the movant would,
at trial, be entitled to judgment as a matter of law.  See,
e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus,

2

in order to defeat a motion for summary judgment, "the party opposing the motion must present <u>evidence</u> of specific facts from which the finder of fact could reasonably find for him or her." <u>Mackey v. Shalala</u>, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

"Cross motions for summary judgment 'do not automatically empower the court to dispense with the determination whether questions of material fact exist.'" <u>Equal Rights Center v. Archstone Smith Trust</u>, 603 F. Supp. 2d 814, 821 (D. Md. 2009) (quoting <u>Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt</u>, 700 F.2d 341, 349 (7th Cir. 1983)).  Rather, the court must examine each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.  <u>Desmond v. PNGI Charles Town Gaming, L.L.C.</u>, 630 F.3d 351, 354 (4th Cir. 2011).  The court may grant summary judgment in favor of one party, deny both motions, or grant in part and deny in part each of the parties' motions.  <u>See</u> <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003).

III.  <u>DISCUSSION</u>

    A.  <u>Background</u>

In or about August 2006, Bingman was hired by the County to work as a laborer assigned to Shop II Highways.  His duties

included a wide variety of intensive physical labor, including pothole patching, permanent pavement repair, tree and bush removal, litter cleanup, stream cleanup, grass cutting, and concrete replacement.

On January 27, 2010, Bingman suffered a back sprain on the job.  He received care from Concentra, the County's employee health provider, several times following the injury.  On February 24, 2010, Concentra placed Bingman on modified duty with a lifting restriction.  However, although he was suffering from pain and, at one point, a "lumbar strain," he was placed back on regular duty on March 4, 2010.

At some date not identified by the parties but between January 27, 2010[2] and March 26, 2010,[3] Bingman filed a Workers' Compensation Claim with regard to his back injury.  On April 6, 2010, in relation to the Workers' Compensation claim, an independent medical examination conducted by Dr. Stephen Matz found that Bingman had healed from his injury, but that his prior medical history and significant back issues could keep him from safely performing his duties.

On July 3, 2010, allegedly in response to Dr. Matz's report, the County terminated Bingman's employment.  After his

---

[2]   The date of Bingman's injury.

[3]   The date of a letter from Mary Lader, a Workers' Compensation Adjuster for the County, to Dr. Stephen Matz regarding Bingman's claim.  ECF No. 47-9.

termination, Bingman was provided, at the County's expense, a term of vocational rehabilitation.  However, the provider did not identify a position for which he was qualified.

Bingman's Workers' Compensation claim went to a hearing on June 6, 2012, nearly two years after his termination.  On June 13, 2012, the Workers' Compensation Commission found that Bingman suffered from an 8% disability resulting from the January 2010 injury and awarded him $142.00 in "permanent partial disability" benefits to be paid weekly for 40 weeks. See Award of Comp. [ECF No. 47-4].

On June 19, 2012, Bingman applied for Social Security Disability Insurance ("SSDI").  On October 23, 2012, he was found disabled as of January 27, 2010 and awarded monthly SSDI benefits of $1,192.00 retroactive to June 2011.


B.   The Issues

      1.   Is Bingman a Qualified Individual?

The ADA provides, in pertinent part:

> No covered entity shall discriminate against
> a  qualified  individual  on  the  basis  of
> disability  in  regard  to . . . discharge of
> employees . . . and other terms, conditions,
> and privileges of employment.

42 U.S.C. § 12112(a).

A "qualified individual" is defined as:

> [A]n individual who, with or without
> reasonable accommodation, can perform the
> essential functions of the employment
> position that such individual holds or
> desires. For the purposes of this
> subchapter, consideration shall be given to
> the employer's judgment as to what functions
> of a job are essential, and if an employer
> has prepared a written description before
> advertising or interviewing applicants for
> the job, this description shall be
> considered evidence of the essential
> functions of the job.

42 U.S.C. § 12111(8).

A plaintiff claiming a violation of the ADA bears the burden of establishing that he is a "qualified individual." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).

Bingman has presented evidence that he was, in fact, working on his job until the day he was terminated to establish that he was able to perform his job functions "with or without reasonable accommodations." However, the County presents the opinion of Dr. Matz, who performed an independent medical evaluation. Dr. Matz concluded that Bingman could not "consistently, safely, and reliably perform the essential job function (sic) of [a] Baltimore County laborer for the Department of Highways." See Matz Report [ECF No. 47-5] at 6.

On the evidence, the Court finds that a reasonable jury could properly find for Bingman or for the County on the Qualified Individual issue. Thus, there are genuine issues of material fact that prevent summary judgment for either side.

6

2.   Inquiry into Medical Issues

Bingman claims that the County violated the ADA by inquiring into Bingman's prior medical issues.  In this regard, he notes the relationship between the County and Concentra, the County's medical provider, and asserts "Baltimore County gives itself the right to own the entire medical history revealed by each patient/employee that goes to Concentra."  Pl.'s Mem. [ECF No. 47-1] at 37.  Bingman asserts that the County's access to his medical information is, in and of itself, "an excessive inquiry into the medical records of employees and a violation of the ADA."  Id.

Bingman's contention appears to be based upon a subsection of the ADA entitled "Prohibited examinations and inquiries,"[4] which states:

> A covered entity shall not require a medical
> examination and shall not make inquiries of
> an employee as to whether such employee is
> an individual with a disability or as to the
> nature or severity of the disability, unless
> such examination or inquiry is shown to be
> job-related  and  consistent  with  business
> necessity.

42 U.S.C. § 12112(d)(4)(A).  The next subsection, entitled "Acceptable examinations and inquiries," states in pertinent part:

---

[4]   See Pl.'s Mem. [ECF No. 47-1] at 25 (citing ADA provisions).

> A covered entity may make inquiries into the ability of an employee to perform job-related functions.

Id. at (d)(4)(B).  An inquiry is "job-related and consistent with business necessity" if an employer "has a reasonable belief, based on objective evidence, that . . . an employee's ability to perform essential job functions will be impaired by a medical condition."  EEOC, Notice No. 915.002, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html.  Whether the County had a reasonable belief that Bingman would be impaired in performing his essential job functions presents factual questions.

Bingman contends that the independent evaluation conducted by Dr. Stephen Matz went beyond the scope of the then-pending workers' compensation claim, and that Dr. Matz relied on that information to form his opinion.  Bingman refers to Dr. Matz's report as "illegally solicited."  Id. at 45.  If Bingman is contending that all or part of Dr. Matz's opinion should be held inadmissible, he should file a motion in limine that clearly states his contention.

3.   <u>Judicial Estoppel</u>

On his June 28, 2012 application for SSDI benefits, Bingman

may have[5] provided January 27, 2010, the date of his injury, as

the onset date of his disability.   <u>See</u> Disability Determination

Explanation [ECF No. 46-6] at SSA.00004.   In reliance on his

application, the Social Security Administration ("SSA") awarded

him disability benefits, retroactive to June 2011.

The County contends that, by virtue of his SSDI

application, Bingman is judicially estopped from asserting in

the instant case that he was able to perform his job duties on

July 3, 2010, the date of his termination.

As stated by the United States Supreme Court:

> [W]here a party assumes a certain position
> in a legal proceeding, and succeeds
> in maintaining that position, he may not
> thereafter, simply because his interests
> have changed, assume a contrary position . .
> . .

<u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (internal

quotation marks omitted).

Judicial estoppel is a discretionary equitable doctrine,

applied on a case-by-case basis.   <u>King v. Herbert J. Thomas</u>

<u>Mem'l Hosp.</u>, 159 F.3d 192, 196 (4th Cir. 1998) ("As an equitable

---

[5]   The "Disability Determination Explanation" provided by the
Social Security Administration [ECF No. 50-1] states that
Bingman "alleges inability to function and/or work as of
01/27/2010."  ECF No. 46-6 at SSA.00004.  However, the record
does not include any portion of Bingman's application in which
<u>he</u> referred to January 27, 2010 as his date of disability.

doctrine, judicial estoppel is invoked in the discretion of the district court with the recognition that each application must be decided upon its own specific facts and circumstances." (citation omitted)).

A party is not judicially estopped from making an ADA claim solely because the claimant filed for, and received, SSDI benefits.  See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999).  Indeed, "there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side" for estoppel to be categorically required.  Id. at 802-03.

If there is a contradiction between a statement in Bingman's SSDI application and his position in the instant case, he "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, [he] must proffer a sufficient explanation." Id. at 806.  However, the County has not provided evidence of a specific statement in Bingman's SSDI application that is necessarily inconsistent with his claims in the present case.

"An SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act,'" whereas a factual statement is "'[t]he light was red/green,' or 'I can/cannot raise my arm above my head.'"  Id. at 802.

10

Neither party has submitted Bingman's SSDI application in its entirety.  Nowhere in the excerpts provided does Bingman definitively assert, "I am disabled" or "I can no longer perform the duties I used to perform as a laborer."  Bingman did state, for example, that his injury impacted his ability to "work longer, have more energy," and that "all my sensus [sic] are getting bad."[6]  Exh. 5 to Def.'s Mot. [ECF No. 46-6] at SSA.000039.  While such statements may present questions regarding whether Bingman actually could perform his labor-intensive job duties, this Court does not find them to contradict directly his claim that he meets the definition of a qualified individual in the instant case.

On the present record, the County shall not be granted summary judgment based upon judicial estoppel.  However, the Court is not holding that the County is prohibited from presenting, at trial, evidence of statements made by Bingman in the SSDI proceedings.

---

[6]     Other similar statements include that "[e]very thing has a mental & physical affect [sic] & all my sensus [sic] are getting worse getting older being able to survive its [sic] very hard on a fixed income (depressing)."  Exh. 5 to Def.'s Mot. [ECF No. 46-6] at SSA.000043.  When asked what activities were affected by his "illness, injuries, or conditions," Bingman checked every listed item, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, using hands, and completing tasks.  Id.  When asked how far he can walk before he needs to stop and rest, Bingman replied that he can walk for "10-20 minutes rest 10 minutes."  Id.

IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendant's Motion for Summary Judgment [ECF No. 46] is DENIED.

2.   Plaintiff's Cross-Motion for Summary Judgment [ECF No. 47] is DENIED.

3.   Plaintiff shall arrange a telephone conference to be held by February 29, 2016 to set a trial date.


SO ORDERED, this <u>Tuesday, February 16, 2016</u>.



<u>            /s/            </u>
Marvin J. Garbis
United States District Judge