IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY R. BINGMAN                    *

            Plaintiff          *

            vs.                *   CIVIL ACTION NO. MJG-13-2678

BALTIMORE COUNTY, MARYLAND     *

            Defendant          *

*      *      *      *      *      *      *      *      *
MEMORANDUM AND ORDER RE: POST TRIAL MOTION

    The Court has before it Baltimore County's Motion for

Judgment Pursuant to Rule 50 Or In The Alternative, Motion for

New Trial Pursuant to Rule 59 [ECF No. 108] and the materials

submitted relating thereto.  The Court finds that a hearing is

not necessary.


I.    BACKGROUND

    In brief,[1] Plaintiff Larry R. Bingman ("Bingman") has sued

his former employer for violating the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., seeking

reinstatement, compensatory damages for mental anguish and

hardship, punitive damages, and attorneys' fees.  At trial, the

jury answered the questions stated on the verdict form as

follows:

---

[1]    For a more complete statement of the background, see the
Memorandum and Order Re: Summary Judgment [ECF No. 57].

SECTION ONE – WRONGFUL DISCHARGE CLAIM

A.   LIABILITY

1.   Has Plaintiff Larry Bingman proven, by
a preponderance of the evidence, that
Baltimore County, Maryland, wrongfully
terminated his employment?

<u>YES</u>

B.   ECONOMIC DAMAGES

2.   What amount, if any, of lost wages and
benefits do you find that Plaintiff Larry
Bingman has proven by a preponderance of the
evidence?

<u>$ 314,000.00</u>

3.   Has Baltimore County proven by a
preponderance of the evidence that, for any
time between the date of his termination to
today, Plaintiff Larry Bingman failed to
make a reasonable effort to obtain work that
was available to him?

<u>YES</u>

a.   If so, for what period of time has
Baltimore County proven by a preponderance
of the evidence that he failed to make a
reasonable effort to obtain work that was
available to him?

<u>218 WEEKS</u>

b.   By how much, if any, do you find
that Baltimore County has proven by a
preponderance of the evidence that Mr.
Bingman's economic damages should be
reduced?

<u>$218,000.00</u>

C.   NON-ECONOMIC DAMAGES

4.   What amounts, if any, do you award
Plaintiff Larry Bingman for non-economic
damages?

$298,000.00


SECTION TWO – Medical-Related Claims


5.   Has Plaintiff Larry Bingman proven, by
a preponderance of the evidence, that
Baltimore County, Maryland wrongfully
obtained a medical examination or made a
wrongful inquiry?

YES


6.   What amount of damages, if any, do you
award Plaintiff Larry Bingman on this claim?


$6,000.00

Jury Verdict, ECF No. 89.

By the instant motion, the County seeks to have the Court

grant it judgment as a matter of law, a new trial, or to reduce

Plaintiff's recovery.


II.   LEGAL STANDARDS

Rule 50 of the Federal Rules of Civil Procedure provides,

in pertinent part:

(a) Judgment as a Matter of Law.


3

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>   (A) resolve the issue against the party; and
>
>   (B) grant a motion for judgment as a matter of law against the party . . . .
>
>   (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. . . .
>
> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial.
>
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . . In ruling on the renewed motion, the court may:
>
>   (1) allow judgment on the verdict, if the jury returned a verdict;
>
>   (2) order a new trial; or
>
>   (3) direct the entry of judgment as a matter of law.

The County presented a Rule 50(a) motion at trial that was denied and has timely filed the instant motion under Rule 50(a).

As expressed by the United States Court of Appeals for the Fourth Circuit in Whalen v. Roanoke County Bd. of Supvs'rs, 769 F.2d 221 (4th Cir. 1985):

> The question to be resolved in deciding a motion for judgment notwithstanding the

> verdict [now referred to a motion for
> judgment as a matter of law] is whether
> there is evidence upon which a jury can
> properly find a verdict.

769 F.2d at 224 (citing Ralston Purina Co. v. Edmunds, 241 F.2d

164, 167 (4th Cir. 1957)).

There is a different, and in a sense "lower" standard

applicable to the motion for a new trial under Rule 59 of the

Federal Rules of Civil Procedure.  When considering a motion for

a new trial, the trial judge may take into account his

evaluation of the weight of the evidence produced by the

respective parties.  Wyatt v. Interstate Ocean and Transport

Co., 623. F.2d 888 (4th Cir. 1980).  As stated over 75 years ago

by the United States Court of Appeals for the Fourth Circuit:

> [I]t is the duty of the judge to set aside
> the verdict and grant a new trial, if he is
> of the opinion that the verdict is against
> the clear weight of the evidence, or is
> based upon evidence which is false, or will
> result in a miscarriage of justice, even
> though there may be substantial evidence
> which would prevent the direction of a
> verdict.

Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350, 352-53 (4th Cir.

1941).


III. DISCUSSION

The County presents the following grounds for relief:

5

- The Court erred in its evidentiary rulings regarding Bingman's Social Security Application award.

- The jury's economic damages award for wrongful termination was excessive with regard to health insurance payments.

- The jury's noneconomic damages awards were excessive.

Each of these grounds shall be addressed in turn.

A.   Social Security Issues

Upon his termination from employment, Bingman applied for, and received social security disability benefits.  The County sought, at trial, to have the jury receive the entirety of the Social Security file and, in particular, to have the jury informed that Bingman had been awarded and received social security benefits.

The Court ruled that the jury would not be told of the Social Security award but the County could utilize in evidence any statement or submission made by Bingman.  The Court stated in the Order Re: Trial Motions [ECF No. 76]:

> The following is the situation regarding the Social Security file:
>
> i. An instruction shall be given regarding the security disability application and file.
>
> ii. Portions of the Social Security file constituting submissions and statements made by Plaintiff may be admitted.

At trial, in the conference held prior to giving jury instructions, the Court stated in response to the County's desire to inform the jury of the Social Security award:

> THE COURT: As I said before and say now, I agree with the plaintiff's position that it would be highly prejudicial; would violate Federal Rule of Evidence 403; and beyond that, I don't think it's relevant to tell the jury of the Social Security Administration's determination, which is not based on the same standard that we have.

Tr.[2] 561.

In the jury instructions, the Court stated:

> There is reference in this case -- there has been reference in this case to a Social Security application. So I want to address this and put it into context. Mr. Bingman has applied for Social Security Administration disability benefits. The submissions and statements made by Mr. Bingman to the Social Security Administration are evidence in this case that you may consider -- together with all of the evidence -- in deciding Mr. Bingman's claims in this case.
> The Social Security Administration is a government agency that makes its disability determination based upon a different basis than you, the jury, in this case; and the agency determination has no effect upon your decision.

Id. at 576.

The Court reiterates its evidentiary determinations

---

[2]    Tr. references herein are to the transcript of July 14, 2015 [ECF No. 114].

regarding the Social Security file and its use in the trial of the case.

The Court did not err in denying the judgment as a matter of law on Bingman's wrongful discharge claim.  Nor, was there any error in regard to the Social Security evidence that would warrant a new trial.

B.   Health Insurance Benefits

In regard to Bingman's claim for compensatory economic damages, he sought compensation for the 314 weeks between the date of his termination and the date of trial.

The Court instructed the jury:

> The economic damages would be the amount
> that reasonably compensates Plaintiff Larry
> Bingman for any lost wages and benefits,
> taking into consideration any increases in
> salary and benefits, including pension, that
> Plaintiff would have received had Mr.
> Bingman not been wrongfully discharged.

Tr. 583.

In final argument, Bingman's counsel stated as to the economic damages claim:

> And he lost a great deal. He would have been
> workin'. He would have been workin' for
> Baltimore County for those years. And at
> $774 a week, he would have earned $241,000.
> He would have had FICA payments on behalf of
> him. And what he lost in those six years was
> $260,000, and that's what should be [stated
> on the verdict].

> That's the amount in economic damages, plus
> any health insurance. Whatever the value of
> that health insurance is, you can apply. So
> more than $260,000 in economic benefits that
> he lost due to the wrongful termination.

Tr. 617-18.

In final argument, the County stated:

> [W]e're trying to figure out here, well,
> what should his damages be reduced by, his
> economic damages? And remember, his economic
> damages are lost wages of $241,488;[3] FICA
> contributions of $18,594; some unknown
> figure that had health insurance, but it had
> no figure next to it, so I don't know what
> that was.

Tr. 638.

During deliberations, the jury sent a note stating:

> How much money did Baltimore County pay
> for the employer contribution to health
> insurance for a Laborer 11 from 2010 to
> 2016?

Tr. 657.

Counsel for Bingman suggested the following response:

> That they apply their good sense and
> they base it upon the evidence and apply
> their good sense as jurors.

Id.

Counsel for the County stated:

> Your Honor, there's been no evidence
> Your Honor, there's been no evidence

---

[3]   This amount is computed based on $774 per week for 312 weeks.

> presented about health contributions, so I
> don't think we can answer that question.

Id. at 657-58.

The transcript reflects that the Court responded to the

note – over objection by the County:[4]

> I have your note and attach a copy for your
> reference. Please be advised in response to
> your question that the information you
> request is not in evidence and cannot be
> provided to you.
>
> However, you may, if you decide to do
> so, state on the verdict sheet that, quote,
> the jury has decided to award an amount
> equal to the insurance payments for, blank,
> a number of weeks, end quote. If you do so,
> I will decide after the trial the legal
> effect, if any, of that statement.

Tr. 658.

The jury rendered its verdict without a statement regarding

health insurance.  The jury verdict reflected an award of

$314,000.00 for 314 weeks of lost wages and an offset of

$218,000.00 for 218 weeks in which Bingman was not seeking

employment.  This, it is apparent that the jury had utilized the

total amount of $1,000.00 per week in computing the economic

loss award and its offset.

---

[4]     Your Honor, I would [object] only because it's
asking the jury to speculate, which is absolutely one of the
rock-solid instructions we have. They're not supposed to
speculate on damages. And if it's not in evidence, it's not in
evidence.  Tr. 658.

The parties agreed that the lost wages were $774.00 per week, hence the $1,000.00 per week jury finding was composed of $774.00 of wages and an additional $326.00.  There appears no doubt that, in addition to the wages, Bingman's compensation would include FICA contributions which were stated by counsel for the County to be $18,594.00 per year or $357.58 per week. Therefore, the jury did not, in fact, provide Bingman with any award for health insurance payments.  Indeed, it appears that the jury had utilized a weekly amount a bit less than it should have.

Accordingly, the County is entitled to no relief with regard to the amount of the economic damages.


C.   Non-Economic Damages

The Court instructed the jury regarding Bingman's non-economic damages claims:

> You may award noneconomic damages for any pain, suffering, or mental anguish Mr. Bingman has proven by a preponderance of the evidence that he experienced as a consequence of the County's wrongful in termination - wrongful termination of his employment.

> In regard to all claims for noneconomic damages, no evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced in evidence.

There is no exact standard for fixing
the compensation to be awarded for these
types of damage. Any award you make should
be fair in light of the evidence presented
at the trial.  In determining the amount of
any noneconomic damages that you decide to
award, you should be guided by dispassionate
common sense.

You must use sound judgment in fixing
an award of damages, drawing reasonable
inferences from the facts in evidence. You
may not award damages based on sympathy,
speculation, or guesswork.

On the other hand, the law does not
require that Plaintiff Larry Bingman prove
the amount of his losses with mathematical
precision. But only with as much
definiteness and accuracy as circumstances
permit.

Any noneconomic damages that you may
award must be fair compensation, no more and
no less.

Tr. 585-86.

The County asserts that the non-economic damages award of

$298,000.00 with regard to Bingman's wrongful employment was

excessive and unjustified.

"A jury's award of compensatory damages will be set aside

on the grounds of excessiveness only if the verdict is against

the clear weight of the evidence, or is based upon evidence

which is false, or will result in a miscarriage of justice."

Hetzel v. Cty. of Prince William, 89 F.3d 169, 171 (4th Cir.

1996) (citations omitted).

12

The Court does not agree with the County and finds the jury verdict within a range of reasonableness. The evidence is by no means of the nature found inadequate in Hetzel.

The evidence was adequate to prove that, prior to his wrongful termination, Bingman was a diligent employee who enjoyed his job. There was evidence that Bingman enjoyed his daily routine and working with others. Indeed, the evidence established that Bingman worked though pain on various occasions and even worked while undergoing chemotherapy. By no means is it appropriate to discount the toll on his joy of life caused by his wrongfully being unemployed. Moreover, the fact that Bingman, after two years of fruitless job seeking, ceased looking for a job could well have been attributed by the jury to the effects of the wrongful termination of employment.

In regard to the County's having subjected Bingman to a wrongful medical examination or inquiry, the jury awarded a minimal amount of $6,000.00 of non-economic damages. It may be true that Bingman did not present specific evidence regarding anguish caused by the County's unauthorized actions regarding his medical condition. However, it is not unreasonable to view the $6,000.00 award as recognition that, to a degree, these unauthorized actions contributed to the mental anguish caused by his wrongful discharge and, that, pursuant to the instructions,

a separate award was required.  Moreover, the amount of the award is sufficiently small to be fairly attributable to a common sense determination that anyone would suffer at least some anguish from the unwarranted invasion of privacy to which Bingman was subjected.

The Court finds that the County is entitled to no relief with regard to the jury's award of non-economic damages.


IV.   CONCLUSION

For the foregoing reasons, Baltimore County's Motion for Judgment Pursuant to Rule 50 or in the Alternative, Motion for New Trial Pursuant to Rule 59 [ECF No. 108] is DENIED.


SO ORDERED, on Tuesday, January 24, 2017.


                              _____/s/_____
                                  Marvin J. Garbis
                              United States District Judge